**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **NERIUM INTERNATIONAL, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| **ALOEVERITAS AMERICAS, LLC,** | § | |
| **HW & B ENTERPRISES, LLC,** | § | |
| **CHRIS HARDY, and** | § | |
| **JOSEPH J. MACKEY,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendants. | § | |

**NERIUM INTERNATIONAL, LLC'S ORIGINAL COMPLAINT**

Plaintiff Nerium International, LLC ("Nerium") files this Original Complaint against Defendants AloeVeritas Americas, LLC, HW & B Enterprises, LLC ("HW&B"), Chris Hardy, and Joseph J. Mackey (together, "AloeVeritas"), stating:

**SUMMARY OF THE CASE**

Nerium is a leading innovator in the cosmetic-product and direct-sales industries. Since 2011, Nerium and its founder, Jeff Olson, have spent millions of dollars and countless hours to develop, market, and sell Nerium products in the United States using the Nerium name and trademarks. Nerium's investment paid off. Since 2012, Nerium has sold its flagship products – its Nerium Night and Day Creams – to well-over a million consumers in the United States, and have generated more than a billion dollars in revenue for the company.

Nerium recently discovered that a competitor – AloeVeritas – just launched a competing product in the United States, and has attempted to hijack Nerium's long history of success in the

process. AloeVeritas has little, if any, name recognition in the United States. Nor does it have any track record of success selling cosmetic products. So AloeVeritas instead decided to hijack *Nerium's* product names, *Nerium's* product packaging, and *Nerium's* track record of success, stating on its website that it has launched a "*New Nerium*," and that the "bestselling day and night creams" are "better than ever!" Worse yet, AloeVeritas has even attempted to hijack the science that proves the effectiveness of Nerium's products, copying the results of a clinical study from Nerium's website and suggesting to consumers that its products yield the same results.

All of this is false. AloeVeritas hopes to capitalize on Nerium's hard-earned success by targeting and deceiving Nerium's brand partners and customers. Such blatant misuse of Nerium's trademark constitutes trademark infringement, unfair competition, and dilution in violation of the LANHAM ACT and Texas law. Nerium prays this Court stops AloeVeritas's unlawful activities before they cause any additional harm to Nerium, its brand partners, and the public at large.

## THE PARTIES

1. Plaintiff Nerium International, LLC is a limited liability company organized under the laws of the State of Texas.

2. Defendant AloeVeritas Americas, LLC is a limited liability company organized under the laws of the State of Texas, with its principal place of business at 1900 McKinney Avenue #2311, Dallas, Texas 75201.

3. Defendant HW & B, LLC is a limited liability company organized under the laws of the State of Texas, with its principal place of business at 1900 McKinney Avenue #2311, Dallas, Texas 75201. Upon information and belief, Defendant HW & B, LLC is the holding company of AloeVeritas Americas, LLC, and the owner, licensor, and distributor of the AloeVeritas products.

4. Defendant Chris Hardy is the Chief Executive Officer of HW & B, LLC. Upon information and belief Chris Hardy resides in the State of Texas. Mr. Hardy may be served with process at 1900 McKinney Avenue #2311, Dallas, Texas 75201.

5. Defendant Joseph J. Mackey is the President and Chief Financial Officer of HW & B, LLC, and may be served with process at 61 Foley Road, Warwick, New York 10990.

## JURISDICTION AND VENUE

6. This action arises under the Trademark Laws of the United States, 15 U.S.C. §§ 1051, *et seq*. Accordingly, this Court has federal question jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), and 1338(b), and 15 U.S.C. § 1121 for the claims arising under the LANHAM ACT. The Court has original jurisdiction over the state law claims in this action under 28 U.S.C. § 1367(a) and the principles of supplemental jurisdiction.

7. This Court has personal jurisdiction over AloeVeritas because it is incorporated in the State of Texas and has its principal place of business in the State of Texas. Upon information and belief, AloeVeritas has knowingly and intentionally offered its products for sale in connection with infringing trademarks within the State of Texas. In addition, Defendants were aware that Nerium is a Texas company, and knowingly infringed and interfered with Nerium's intellectual property. Defendants thus intentionally aimed their tortious conduct at the State of Texas, knowing that Nerium would feel its effects there.

8. This Court has personal jurisdiction over HW & B, LLC because it is incorporated in the State of Texas and has its principal place of business in the State of Texas.

9. This Court has personal jurisdiction over Chris Hardy because he resides in the State of Texas.

10. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and (b)(2). AloeVeritas resides in this judicial district and/or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTS

**A.    Nerium Creates a Well-Recognized Brand.**

9. Nerium is an award-winning innovator in the cosmetic-products and direct-sales industries. In 2011, Jeff Olson launched Nerium International, LLC. Mr. Olson and Nerium invested thousands of man-hours and significant financial resources into developing the name, the packaging, and the promotional materials for the Nerium product line. Nerium uses its company name – NERIUM – prominently on all of its product packaging, on its website, and in all of its promotional materials.

10. Among other products, Nerium currently markets and sells both a Nerium Night Cream and a Nerium Day Cream in the United States. Those products prominently display the trademark NERIUM on the bottles. Images of Nerium's Night and Day Creams may be found below:



11. Nerium has spent millions of dollars and has thousands of Brand Partners promoting products using the NERIUM mark in the United States and worldwide. As a result of its widespread efforts, consumers of skin care and wellness products now recognize Nerium as a source of those quality products. Through its continuous and exclusive use of the NERIUM mark over the last several years, Nerium's packaging designs, trade dress, its name, and trademarks have become distinctive of the products it sells. As a result of Nerium's extensive use and promotion of NERIUM for its products, the term NERIUM is widely associated with Nerium International, and the NERIUM trademark is famous and well-known.

12. The NERIUM mark is inherently distinctive, and acquired distinctiveness long prior to Defendants' use and entrance into the market in connection with its competing products. The goodwill associated with the NERIUM mark is a valuable asset to Nerium, and Nerium has expended great effort and considerable resources in promoting its products using the NERIUM mark. The NERIUM mark identifies Nerium as the source of the goods offered, and represents the valuable goodwill of Nerium among members of the relevant consuming public.

13. Nerium is the public face of all NERIUM-branded products and is the only company with which the public associates the Nerium products. Nerium is solely responsible for training its distributors (called Brand Partners), providing customer support, and responding to customer complaints or issues for all products sold under its name. Nerium has never assigned or licensed any rights to its name, and as such, is the owner of all rights to its name and the names of its products.

B.   **AloeVeritas Infringes Nerium's Trademark.**

14. In October 2017, AloeVeritas launched its own night and day cream cosmetic products in the United States. AloeVeritas prominently uses the term "Nerium" on its bottles, on

its website, and in its promotional materials. Images of the AloeVeritas products are found below:





http://www.aloeveritas.com/en/product/nerium-night-cream/



http://www.aloeveritas.com/en/product/nerium-day-cream/

15. AloeVeritas also uses NERIUM on its product packaging, an image of which appears below:



16. In addition to the use of the mark, AloeVeritas copied the unique design of Nerium's packaging (the "NERIUM trade dress") an image of which appears below.



17. To compound the confusion caused by similarity in the product names and product packaging, AloeVeritas purports to announce the arrival of the "New Nerium," suggesting to consumers that its products are a newer and better version of Nerium's products. AloeVeritas

further adds to this confusion by referring to *its* products – which have never before been sold in the United States – as the "bestselling day and night creams – now better than ever!" An image of this advertisement appears below:



18.     But AloeVeritas has never had a bestselling day or night cream in the United States or elsewhere; this marketing claim can only to refer to *Nerium's* bestselling night and day creams, and is intended to cause confusion among consumers of these products. Elsewhere on its website, AloeVeritas directly refers to Nerium's products and history of success, stating "The active ingredient Nerium Oleander is already a runaway success in North America. A US company has generated an incredible turnover of 600 million dollars by using the effective ingredient in cosmetics."

19.     Worse yet, AloeVeritas has even attempted to hijack the science that supports the efficacy of *Nerium's* products. On its website, AloeVeritas states "independently conducted clinical trials" support the following product claims: (a) that "93% of participants showed significantly increased skin moisture;" (b) that "86% of participants showed improvements in uneven skin texture;" and (c) that "86% of participants noted reduced pore size." But AloeVeritas has not conducted any independent clinical studies to support those claims. AloeVeritas copied

those claims from *Nerium's* website and promotional materials to suggest to consumers that the products are the same or different versions of the Nerium's products.

20. The launch of these AloeVeritas products has already caused substantial confusion among consumers in the United States. AloeVeritas has approached Nerium's customers and brand partners through the use of targeted advertising on social media websites, including Facebook. Some of these targeted advertisements ask Nerium's brand partners and consumers to "Join AloeVeritas on the ground floor to sell '*All New Nerium.*'" (Emphasis added.) Images of these advertisements appear below:



21. Defendants' use of the NERIUM mark in their product names, on their labels, and in their promotional materials is likely to confuse consumers into believing that Defendants' products are made by, sponsored by, connected with, endorsed by, or otherwise affiliated with

Nerium. Defendants' use of the NERIUM mark is also likely to dilute the strength of Nerium's famous, widely recognized, and distinctive NERIUM trademark. This use will substantially harm Nerium's reputation for quality products. Defendants' willful and deceitful acts have caused and will continue to cause irreparable harm to Nerium and the NERIUM trademark.

## COUNT ONE
## TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1125(a)(1)(A))

22. Nerium incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

23. Nerium is the owner of the trademark NERIUM, as used in association with cosmetics and wellness products. This mark is valid and protectable and has been used continuously in commerce by Nerium for years such that the public has come to associate that mark with Nerium.

24. The mark is inherently distinctive or, alternatively, has acquired secondary meaning to become distinctive to the public through Nerium's continuous and exclusive use and its widespread promotion of goods under the mark. Nerium has used NERIUM on products, including powders and creams, sold in commerce for years.

25. Nerium has not consented to Defendants' use of NERIUM on their products, including powders and creams. Defendants' use of NERIUM on products sold in commerce is likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Nerium and is likely to cause confusion or mistake, or to deceive consumers as to the origin, sponsorship, or approval by Nerium as to those goods sold by Defendants.

26. Defendants' use of NERIUM has been willful and intentional in a deliberate effort to cause confusion and to trade off the valuable goodwill that Nerium has developed in the mark.

27. Defendants Hardy and Mackey have, and have had, a financial interest in the affairs and activities of Defendants and the acts complained of herein. Upon information and belief, Defendants Hardy and Mackey control, and have controlled, and have, and have had, the power to control the affairs and activities of Defendants, including the infringement alleged herein. Upon information and belief, Defendants Hardy and Mackey supervise, and have supervised, and have, and have had the power to supervise, the affairs and activities of Defendants, including the infringement alleged herein.

28. Defendants' activities have harmed Nerium. As such, Nerium is entitled to damages including, but not limited to, Defendants' profits, damages Nerium has sustained, and the costs of this action per 15 U.S.C. § 1117(a). Because Defendants' actions have been willful, deliberate, and with full knowledge of their illegality, Nerium is entitled to and seeks treble damages and attorneys' fees per 15 U.S.C. § 1117(a).

29. Unless restrained by the Court, Defendants' actions will cause ongoing harm to Nerium, as Nerium has no control over the quality of products sold by Defendants. If Defendants are allowed to continue, Nerium will suffer irreparable injury to its reputation and business for which it has no adequate remedy at law. Nerium therefore seeks preliminary and permanent injunctive relief per 15 U.S.C. § 1116.

COUNT TWO
TRADE DRESS INFRINGEMENT
(15 U.S.C. § 1125(a)(1)(A))

30. Nerium incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

31. In connection with the promotion and sale of its skin care and wellness products, Nerium has for many years used a distinctive and non-functional package design. The NERIUM trade dress, in addition to being distinctive and non-functional, has acquired strong secondary

meaning and significance in the minds of the relevant consuming public. By using the NERIUM trade dress, Nerium has successfully differentiated its products from others' products, and the consuming public has come to associate the NERIUM trade dress with Nerium and its high quality products and services.

32. Defendants are now selling and promoting skin care and wellness products that compete with Nerium's, and Defendants are doing so by using a package design that is confusingly similar to the NERIUM trade dress.

33. Defendants' products compete directly with, and are sold to the same consumers in the same market as, Nerium's products.

34. Defendants' promotion and sale of products that compete directly with Nerium's products, using a trade dress that is closely similar to the Nerium trade dress, creates a likelihood of confusion among the relevant consuming public as to source, origin, sponsorship, and association

35. Defendants' use of the trade dress confusingly similar to the NERIUM trade dress on skin care and wellness products constitutes infringement of trade dress and unfair competition in violation of 15 U.S.C. § 1125(a).

36. As a direct consequence of Defendants' actions, consumers have been, and are likely to continue to be, deceived, confused, and/or mistaken as to the source, origin, sponsorship and/or endorsement of Defendants' products and their relationship to Nerium and its well-known products.

37. Upon information and belief, Defendants adopted and are using their confusingly similar trade dress with full knowledge of NERIUM trade dress, and with the intent to deceive, mislead, and confuse consumers into believing that Nerium is the source of Defendants' products, or that Defendants' products are sponsored by, licensed by, or otherwise affiliated with Nerium, so as to trade on the substantial fame, reputation and goodwill associated with Nerium and its products.

38. Defendants Hardy and Mackey have, and have had, a financial interest in the affairs and activities of Defendants and the acts complained of herein. Upon information and belief, Defendants Hardy and Mackey control, and have controlled, and have, and have had, the power to control the affairs and activities of Defendants, including the infringement alleged herein. Upon information and belief, Defendants Hardy and Mackey supervise, and have supervised, and have, and have had the power to supervise, the affairs and activities of Defendants, including the infringement alleged herein.

39. Defendants' activities have harmed Nerium. As such, Nerium is entitled to damages including, but not limited to, Defendants' profits, damages Nerium has sustained, and the costs of this action per 15 U.S.C. § 1117(a). Because Defendants' actions have been willful, deliberate, and with full knowledge of their illegality, Nerium is entitled to and seeks treble damages and attorneys' fees per 15 U.S.C. § 1117(a).

40. Unless restrained by the Court, Defendants' actions will cause ongoing harm to Nerium, as Nerium has no control over the quality of products sold by Defendants. If Defendants are allowed to continue, Nerium will suffer irreparable injury to its reputation and business for which it has no adequate remedy at law. Nerium therefore seeks preliminary and permanent injunctive relief per 15 U.S.C. § 1116.

### COUNT THREE
### FALSE ADVERTISING
### (15 U.S.C. § 1125(a)(1)(B))

41. Nerium incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

42. Defendants have made false and misleading advertising claims to consumers regarding the nature, characteristics, and/or qualities of Defendants' products, including claims that: (1) their products are the "New Nerium," i.e. a newer and better version of Nerium's products;

(2) that their products – which have never before been sold in the United States – are the "bestselling day and night creams; and (3) that independently conducted clinical trials" support the following product claims: (a) that "93% of participants showed significantly increased skin moisture;" (b) that "86% of participants showed improvements in uneven skin texture;" and (c) that "86% of participants noted reduced pore size."

43. Defendants are making such false and misleading claims in commerce in connection with the commercial promotion, advertising, and sale of products.

44. Defendants' false and misleading claims are likely to damage Nerium in that consumers will believe that Nerium's products are of a lesser quality and therefore less desirable than Defendants' "New" products and that Defendants' skin care products are more successful than Nerium's skin care products. Consumers will also be deceived into believing that Defendants' product claims are supported by clinical trials when in fact no such clinical trials have been conducted.

45. By making false and misleading claims about Nerium's products and Defendants' products, Defendants have harmed and continue to harm Nerium's goodwill and reputation.

46. The above acts by Defendants constitute false and misleading advertising and commercial defamation in violation of Section 43(a) of the LANHAM ACT, 15 U.S.C. §1125(a)(1)(B).

47. Defendants Hardy and Mackey have, and have had, a financial interest in the affairs and activities of Defendants and the acts complained of herein. Upon information and belief, Defendants Hardy and Mackey control, and have controlled, and have, and have had, the power to control the affairs and activities of Defendants, including the false advertising alleged herein. Upon information and belief, Defendants Hardy and Mackey supervise, and have supervised, and have,

and have had the power to supervise, the affairs and activities of Defendants, including the infringement alleged herein.

48. Defendants' activities have harmed Nerium. As such, Nerium is entitled to damages including, but not limited to, Defendants' profits, damages Nerium has sustained, and the costs of this action. Because Defendants' actions have been willful, deliberate, with full knowledge of their illegality, Nerium is entitled to and seeks exemplary damages and attorneys' fees.

49. Unless restrained by the Court, Defendants' actions will cause ongoing harm to Nerium, as Nerium has no control over the quality of products sold by Defendants. If Defendants are allowed to continue, Nerium will suffer irreparable injury to its reputation and business for which it has no adequate remedy at law. Nerium therefore seeks preliminary and permanent injunctive relief.

## COUNT FOUR
## DILUTION BY BLURRING AND TARNISHMENT
## (15 U.S.C. § 1125(C))

43. Nerium re-alleges and incorporates by reference all of the preceding facts and allegations.

44. The NERIUM mark is famous and distinctive.

45. Defendant's use of the NERIUM mark in connection with the sale of skin care products impairs the distinctiveness of the famous NERIUM mark. As such Defendants' use of the NERIUM mark is likely to cause dilution by blurring of the NERIUM mark in violation of 15 U.S.C. § 1125(c).

46. The association arising from the Defendants' use of the NERIUM mark on their skin care products and the NERIUM mark harms the reputation and goodwill of the NERIUM

mark. As such, Defendants' use of the NERIUM mark is likely to cause dilution by tarnishment of the NERIUM mark in violation of 15 U.S.C. § 1125(c).

50. Unless restrained by the Court, Defendants' actions will cause ongoing harm to Nerium, as Nerium has no control over the quality of products sold by Defendants. If Defendants are allowed to continue, Nerium will suffer irreparable injury to its reputation and business for which it has no adequate remedy at law. Nerium therefore seeks preliminary and permanent injunctive relief as authorized by 15 U.S.C. § 1125(c)(1).

## JURY DEMAND

47. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Nerium prays that it have judgment against Defendants for the following:

(1) A decree that Defendants have infringed the NERIUM mark and the NERIUM trade dress in violation of 15 U.S.C. § 1125(a)(1)(A);

(2) A decree that Defendants have engaged in false advertising in violation of 15 U.S.C. § 1125(a)(1)(B);

(3) A decree that the NERIUM mark has been, and will be, diluted by blurring and diluted by tarnishment due to the Defendants' actions in violation of 15 U.S.C. § 1125(c);

(4) A preliminary injunction enjoining Defendants and their agents, servants, employees, affiliates, divisions, subsidiaries, and those in association with them, from using any mark confusingly similar to the NERIUM marks, using any trade dress confusing similar to the NERIUM trade dress, or using the term Nerium in their product names, domain names, on their product labels, or in their advertising;

(5)     A permanent injunction enjoining Defendants and their agents, servants, employees, affiliates, divisions, subsidiaries, and those in association with them, from using any mark confusingly similar to the NERIUM marks, using any trade dress confusing similar to the NERIUM trade dress, or using the term Nerium in their product names, domain names, on their product labels, or in their advertising;

(6)     An award of damages as requested in each Count above;

(7)     An award of exemplary damages;

(8)     An award of all costs of this action, including attorneys' fees and interest; and

(9)     Such other and further relief, at law or in equity, to which Nerium may be justly entitled.

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
  Bar No. 24051315
  cschwegmann@lynnllp.com

LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Monica W. Latin
  Bar No. 00787881
  mlatin@ccsb.com
Ken Carroll
  Bar No. 03888500
  kcarroll@ccsb.com
Parker Graham
  Bar No. 24087612
  pgraham@ccsb.com

CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202
Phone: (214) 855-3000
Facsimile: (214) 855-1333

*Attorneys for Nerium International, LLC*